UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| DAVID MILLER ) | Case No. 05-15002-SSM |
| ) | Chapter 7 |
| Debtor ) | |

**MEMORANDUM OPINION**

Before the court is the final report and proposed distribution to creditors, together with applications for compensation, filed by H. Jason Gold, chapter 7 trustee. The debtor's estranged wife, Judith Miller, filed an objection asserting that the trustee's proposed compensation was excessive to the extent it was based on funds distributed to her as the co-owner of real estate she and the debtor owned as tenants by the entirety. She asserts that the funds freed up by reducing the allowed compensation should be applied pro-rata to non-priority unsecured claims on which she and the debtor are jointly liable. For the reasons stated, the compensation will be reduced, but the funds freed up will be applied to the remaining priority claim.

Background

David Miller ("the debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this court on October 14, 2005, and received a discharge on February 7, 2006. H. Jason Gold was appointed as chapter 7 trustee. Among the assets listed by the debtor on his schedules was a parcel of real estate located at 2518 Fallon Drive, Oak Hill, Virginia. The property was owned by the debtor and his wife, Judith M. Miller, as tenants

1

by the entirety. The debtor claimed $1.00 of the equity in the property as exempt under the Virginia homestead exemption and $464,000 as exempt under § 522(b)(2)(B), Bankruptcy Code.

The trustee and Ms. Miller obtained a contract to sell the property for $760,000.00, and this court, on motion of the trustee, entered an order approving the sale. After payment of the two deeds of trust, a judgment lien, real estate commission, and settlement costs, the net proceeds payable to the seller—identified on the settlement statement (HUD-1 Form) as "H. Jason Gold, Chapter 7 Trustee, and Judith M. Miller"—was $309,811.33. This amount was wire-transferred by the settlement agent to the trustee, who paid one-half—$154,905.67—to Ms. Miller the following day. No other assets were administered by the trustee. The final report and account seeks approval of $41,278.57 in trustee compensation based upon $760,571.48 being disbursed to parties in interest other than the debtor. Aside from the payments to the trustee and his attorney,[1] the only other parties who will receive a distribution will be the Internal Revenue Service, which will be paid $90,497.50 on its secured claim, and $20,927.61 to the Commonwealth of Virginia on a priority child support claim. The priority claim of the Internal Revenue Service and the 15 unsecured claims will receive no distribution.[2]

---

[1] The trustee's attorney, Joel S. Aronson, has requested $2,160 in compensation and $49.89 in expenses. After reviewing the time and billing records submitted in support of the application, the court will allow compensation and reimbursement of expenses to Mr. Aronson in the requested amount.

[2] The priority claim of the Internal Revenue Service is in the amount of $235,357. The general unsecured claims total $230,306.70.

Discussion

A.

Because this case was filed before October 17, 2005, allowance of compensation to the trustee is governed by § 330, Bankruptcy Code, as it existed before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 1995, Pub.L.109-8. Under that regime, the compensation of trustees, like that of other estate professionals, is based on "the nature, the extent, and the value" of the services rendered, taking into account the factors set forth in Section 330(a)(3), the most important of which are the time spent on the services and the rates charged for the services.[3] § 330(a)(3)(A) and (B). Compensation of a trustee is capped, however, by § 326, Bankruptcy Code, which sets forth a sliding scale based on the amount distributed to creditors. Specifically, § 326 provides in relevant part:

> (a) In a case under chapter 7 or 11, the court may allow *reasonable compensation under section 330* of this title of the trustee for the trustee's services, payable after the trustee renders such services, *not to exceed* 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of

---

[3] The other three factors specified in the statute are:

> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task address; and
>
> (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

§ 330(a)(3)(C) - (E), Bankruptcy Code.

3

> $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such monies in excess of $1,000,000 upon all moneys *disbursed or turned over in the case by the trustee to parties in interest*, excluding the debtor, but including holders of secured claims.

§ 326(a), Bankruptcy Code (emphasis added). As this court has previously observed, "the percentage scale in Section 326 is legally neither a presumptive fee nor a 'statutory commission,' but rather a *limitation* on the compensation that might otherwise be awarded the trustee under Section 330." *In re Lewis S. Lauria, III,* No. 00-10550-SSM, 2002 WL 32388348 (Bankr. E.D. Va., April 17, 2002) at *3 (emphasis in original). At the same time, it is rare in routine or smaller cases for trustees to be awarded less than the maximum amount allowed. *Id.* Indeed, even when allowance of the statutory maximum would result in an hourly compensation to the trustee in excess of the trustee's normal billing rates, such compensation may nevertheless be appropriate. As this court explained in *Lauria*:

> [A]n appropriate hourly rate for trustee services must necessarily take into account the fact that not every case results in the recovery of funds. Put another way, there are many cases in which trustees are undercompensated for their efforts. The question is not whether the trustee's hourly compensation is high in a particular case, but whether it is high taking into account the trustee's universe of cases.

*Id.* at 4.

B.

The time records submitted by the trustee reflect 72.3 hours expended by him and 32 hours by his legal assistant. Their hourly billing rates are shown as $350.00 and $75.00 per hour, respectively. Thus, the "lodestar" amount of compensation payable under § 330(a), before consideration of the other factors or of the cap, is $27,705. The trustee has administered the case expeditiously, and substantial funds have been generated. At the same

time, only two creditors are benefitting. One of those, however, holds a large claim for unpaid child support. Without consideration of the statutory cap, the court would be inclined to allow a multiplier of up to 1.4 as an appropriate adjustment to compensate for the cases in which the trustee will receive little or nothing in the way of a fee. That would equate to a tentative fee of $38,787.00 before consideration of the cap.[4]

C.

The question raised by the objection is whether the base used for the percentage scale computation includes money turned over to a co-owner of property that the trustee sells. The court holds that it does not. It is true that § 326(a) refers to "moneys disbursed or turned over in the case by the trustee to *parties in interest*, excluding the debtor but including holders of secured claims." (emphasis added). The term "parties in interest" is not defined in the Bankruptcy Code. In common usage it usually refers to parties having an important stake in the case, even though they are not creditors. However, even if a non-debtor co-owner of property administered by the bankruptcy trustee could be considered a "party in interest," the money must be disbursed or turned over "in the case," that is as part of administering the debtor's estate, and not simply, in a temporal sense, during the case. Thus, even where the trustee is permitted over a co-owner's objection to sell the interest of both the debtor and the co-owner in property, the trustee is required to distribute to the co-owner "the proceeds of such sale, less the costs and expenses, *not including any compensation* of the trustee, of such sale." § 363(j), Bankruptcy Code (emphasis added). It is true, as the trustee

---

[4] The trustee has also sought reimbursement of expenses in the amount of $90.16. The court has reviewed these and will allow them.

argues, that the language can be read literally to constitute only a restriction on charging trustee compensation to the co-owner, and not necessarily to the estate.  The language is broadly suggestive, however, of a Congressional intent that compensation would not be charged at all on that portion of the net proceeds attributable to the co-owner's interest.

      The sale here, moreover, was not even a § 363(h) sale of the interest both of the debtor and a co-owner.  Rather it was a joint sale by the trustee *and* the co-owner.  The fact that Ms. Miller's half-share of the net proceeds may have passed through the trustee's bank account rather than having been disbursed to her at settlement does not change the fact that her share of the proceeds was not property of the estate to which the trustee had any claim: it was always Ms. Miller's property.  As Judge Mayer of this court pointed out recently in a case involving the same trustee, the base upon which the cap is calculated includes only money that is "property of the estate" and is distributed to "a party that holds either a claim against the debtor or is entitled to an administrative expense." *In re Market Resources Development Corp.*, No. 02-84844-RGM (Bankr. E.D. Va., December 10, 2004), slip op. at 8 (citing *In re Citi-Toledo Partners II,* 254 B.R. 155, 161 (Bankr. N.D. Ohio 2000) and *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 478 (Bankr. W.D. Tex. 1990).  Ms. Miller was neither the holder of a claim against the debtor nor an administrative expense claimant.  Rather, she was simply a co-owner who cooperated with the trustee to sell the entire interest in the property.  Her half-share of the net proceeds was not property of the estate.  It was not a legal or equitable interest of the debtor in property, nor was it property recovered by the trustee under one of his avoiding powers.  § 541(a)(1) and (3).  Accordingly, the court

concludes that the base for computing the statutory cap does not include the $154,905.67 paid over to Ms. Miller as her share of the net sales proceeds.

Once this is excluded, the base for computing the cap on trustee compensation is $605,665.81. Application of the scale in § 326(a) gives $33,533.29 as the maximum compensation.[5] Since this is less than the tentative fee determined under § 330(a)—although well in excess of the lodestar amount—compensation will be awarded in the full amount permitted by the cap.

D.

Reduction of the trustee's compensation to $33,533.29 from the requested $41,278.57 frees up $7,745.28 for the payment of claims. Ms. Miller argues that this should be applied to the unsecured claims on which she is jointly liable with the debtor. In support of this position, Ms. Miller presumably relies on *Sumy v. Schlossberg*, 777 F.2d 921 (4th Cir. 1985), which authorizes a trustee to administer tenancy by the entireties property for benefit of joint creditors of husband and wife, even though the property would be exempt from the claims of non-joint creditors. It is not clear whether the $235,356.99 priority tax claim of the Internal Revenue Service is a joint liability of the debtor and Ms. Miller or is solely a liability of the debtor. But the right to insist that the debtor's share of the proceeds be applied only to joint claims is the debtor's. It results from an exemption claimed by the debtor, and the debtor is

---

[5] The computation is as follows:

| | Base | Commission |
|---|---:|---:|
| 25% of first $5,000 | $5,000.00 | $1,250.00 |
| 10% of next $45,000 | $45,000.00 | $4,500.00 |
| 5% of next $950,000 | $555,665.81 | $27,783.29 |
| 3% of amounts over $1 million | $0.00 | $0.00 |
| Total | $605,665.81 | $33,533.29 |

free to waive it. Since priority tax claims are non-dischargeable, § 523(a)(1)(A), Bankruptcy Code, the debtor might well wish to see the liability, whether or not it is joint, reduced by payment. Ms. Miller, in any event, does not have standing to assert the debtor's exemption rights. Accordingly, the court will direct that the $7,745.28 be applied to the IRS priority tax claim.

     A separate order will be entered consistent with this opinion.

Date: _____      _____
                                                                                     Stephen S. Mitchell
Alexandria, Virginia                                   United States Bankruptcy Judge

Case 05-15002-SSM    Doc 48    Filed 06/27/06    Entered 06/27/06 16:34:33    Desc Main
                            Document      Page 9 of 9

Copies to:

H. Jason Gold, Esquire
Wiley Rein & Fielding LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA  22101
Chapter 7 trustee

Joel S. Aronson, Esquire
Ridberg, Press & Sherbill, LLP
3 Bethesda Metro Center, Suite 650
Bethesda, MD  20814-5329
Counsel for the trustee

Richard J. Stahl, Esquire
Stahl, Forest & Zelloe P.C.
11350 Random Hills Road, Suite 700
Fairfax, VA  22030
Counsel for Judith Miller

Martha L. Davis, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA  22314

Robert K. Coulter, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA  22314

Mani B. Fierro, Esquire
The Herndon Law Firm, P.L.C.
950 Herndon Parkway, Suite 280
Herndon, VA 20170
Counsel for the debtor